THE OHIO AND MISSISSIPPI RAILROAD COMPANY, Plaintiff in Error, *v.* WILLIAM E. MIDDLETON *et al.*, Defendants in Error.

### ERROR TO MARION.

Where a party proceeds to trial upon a replication, which he insists is not an answer to his plea, without demurring to, or moving to strike it from the files, he will be held to have admitted its sufficiency.

In declaring on a contract executed by an agent, the contract may be described as having been signed by the principal, or by his agent for him.

When it is doubtful whether the contract was intended to bind the principal or the agent, extrinsic evidence may be received to ascertain the intention.

The ratification by the principal of a contract of the agent, amounts to a waiver by the principal of a want of authority in the agent.

THIS was an action of "trespass on the case on promises" by defendants in error against plaintiff in error. Declaration contained three counts. Damages, $500.

1st count, is upon a *special contract*—charged and averred to have been made by plaintiffs, by Wm. P. Whittle, their agent, who signed said contract by B. B. Thomas, his agent—to the effect following: That the said plaintiffs below agreed to dig a well for the use of the Ohio and Mississippi Railroad Company, defendants below, at the side track to be laid out by defendants below, at Middleton depot, in Marion county, Illinois. Well to be dug twelve feet in diameter, until rock of sufficient strength is reached to support a wall one foot thick—of height to reach surface—and was to be built as directed by the engineer in charge of the work at that point. Then the well was to be ten feet in diameter until water was reached of sufficient quantity for the purpose aforesaid—said well to be dug and walled as required by engineer in charge of the construction of the work, for the following consideration, to wit: $10 per foot for the first twenty feet dug and walled as required, etc.; $12 per foot for the second twenty feet; $15 per foot for the third twenty feet; and $3 per foot additional for each twenty feet thereafter. Defendants were to furnish a force pump and a chain pump, if

necessary, to keep water out of well while at work—furnishing pumps *discretionary* with defendants' engineer—plaintiffs not bound to dig more than one hundred feet, nor bound to finish well if life endangered by the *gas* or *damp;* this to be decided by defendants or their engineer. Averment that in consideration of plaintiffs' (below) promise to perform, etc., defendants undertook and promised to fulfill their part, etc. Averment of performance by plaintiffs below, under inspection of engineer in charge, and approved by him; that it was dug deep enough to supply sufficient water, etc., and was so determined by said engineer, and all of said work was approved by said engineer, and received by him for said defendants below as completed. Averment that said contract was executed by Whittle, by B. B. Thomas, on defendants' behalf. No breach to first count, and no averment that it was delivered to plaintiffs.

2nd count, For that, etc., defendants on the 16th of February, 1855, made, etc., and delivered to said plaintiffs their certain other contract, in writing, dated February 16th, 1855, which said contract, etc., the said plaintiffs aver, was executed on the part of said defendants, and at the special instance and request of said defendants, by the agent of said defendants, Wm. P. Whittle, signed and abreviated thus, " Wm. P. Whittle, by B. B. Thomas," in consideration of the promises of defendants, and on behalf of defendants, and at special instance of defendants, etc., the plaintiffs agreed to dig a well for the use of defendants, at the side track to be laid out by said defendants by the said Wm. P. Whittle, or his assistant, at a place in Marion county, called Middleton depot; said well to be dug twelve feet in diameter till they struck rock, etc., sufficient to support wall one foot thick, etc., to be built as directed by the engineer in charge, etc., then ten feet in diameter until water sufficient for the use of Ohio and Mississippi Railroad Company was found; said well to be dug and walled as required, etc., for the following consideration : $10 per foot for first twenty feet ; $12 per foot for second ; $15 per foot for third ; and $3 additional for each twenty feet thereafter—that is to say, $3 additional to the last named sum of $15 per foot. And it was further agreed that if water sufficient to retard the digging of said well was found, and not sufficient for the purposes named, etc., then defendants were to furnish plaintiffs a chain pump free of charge, to be furnished, however, at defendants' discretion, etc. Further that plaintiffs should not be bound to dig more than one hundred feet, etc., and were not bound to finish the same if gas or damp endangered life, to be decided by defendants. Plaintiffs aver that they, at special instance, etc., of defendants, and

upon the consideration, undertaking and agreement of said defendants in said contract, executed said contract. Plaintiffs aver that they dug well fifty-four feet, and were then notified by defendants not to dig any deeper, because there was water sufficient, etc., and thereby completed, walled and finished said well, and *delivered possession* to defendants, and it was, on the 1st of November, 1855, *accepted* by defendants. Averment that defendants broke their agreement in this, to wit: That plaintiffs found water sufficient to retard digging and not sufficient for the use aforesaid, and notified defendants thereof; that the engineer in charge declared a pump necessary, and said defendants then, etc., promised to furnish a chain pump, as bound, etc., by said contract. Averment that defendants failed to furnish a chain pump, etc., whereby an action accrued to plaintiffs, to demand, etc., $400.

3rd count, Indebitatus assumpsit, on 1st April, 1856, for digging and walling well, $500—common conclusion; damages, $500.

Defendants plead general issue, and joinder, and three special pleas as follows, to wit:

Special plea, to 3rd count, to wit: That the work, etc., was done under a written contract between Wm. P. Whittle and said plaintiffs, dated 16th February, 1855, and that other than under said contract they never dug any well at Middleton depot, or elsewhere, for use of said road, etc.

2nd special plea to 1st count, *actio non*, because the work therein (1st count) mentioned, if done at all, was under a written contract with Wm. P. Whittle, and not otherwise, etc. Verification, etc.

3rd special plea to 2nd count, *actio non*, because the chain pump was to be furnished under agreement between Whittle and plaintiffs, and was to be so furnished at Whittle's discretion, and not by defendants.

Replication as to 2nd, 3rd and 4th pleas, *precludi non*, because they say, that by virtue of the said contracts in the said plaintiffs' declaration mentioned, in manner and form as therein set forth, the said defendants did undertake and promise as alleged therein in the said declaration, etc.; conclusion to the country, etc.

No issue joined on this by defendants.

*B. B. Thomas* testified, for plaintiffs below, that in December and January, 1855, he was assistant engineer under Wm. P. Whittle, on the Ohio and Mississippi Railroad; that said Whittle authorized him to sign his (Whittle's) name to an agreement with plaintiffs, to dig a well at Middleton station, on the Ohio and Mississippi Railroad; witness did not write the agree-

ment, except the latter clause; witness had a minute in a memorandum book of what he wrote. Mr. Whittle did not give witness written authority.

Witness was then asked by plaintiffs, " for whom he executed the contract sued on, whether for Whittle or the company." Defendants objected to the question, court overruled objection; witness stated that he believed he executed or signed Whittle's name for the Ohio and Mississippi Railroad Company, as the well was for the use of the company. Defendants excepted to decision of court, in overruling their objection, and admitting said testimony at the time. Plaintiffs then offered the following instrument in evidence, being the instrument alluded to by witness Thomas, viz:

STATE OF ILLINOIS,
CLAY COUNTY.            An Article of Agreement, made and entered into the fifth day of January, A. D. 1855, by and between W. E. Middleton, and L. L. Morgan, of the first part, and William P. Whittle, (res'd. engineer, on Ohio and Mississippi Railroad,) of the second part, that party of the first part hereby covenant and agree to dig a well for the use of the Ohio and Mississippi Railroad, at the side track to be laid by the said. party of the second part or his assistant, in Marion county, Illinois, known as the Middleton depot; said well to be dug as follows : twelve feet in diameter, until they strike rock of sufficient strength to support a wall one foot thick, and of sufficient height to reach surface of the ground, (and to be built as directed by the engineer in charge of the work,) then the party of the first part shall dig but ten feet in diameter, until water is found sufficient for the purpose named above; said well to be dug and walled as required by the engineer in charge, for the following consideration, to wit : The party of the second part, hereby covenants and agrees to pay the said party of the first part ten dollars for each foot for the first twenty feet dug and walled as required by the engineer, and twelve dollars for the second twenty feet, fifteen dollars for the third twenty feet, and three dollars per foot additional for each twenty feet thereafter. And the party of the second part further agrees, that if the said party of the first part shall find water sufficient to retard the digging of said well, and not sufficient for the purpose named in this contract, then said party of the second part will furnish said first party with a chain pump free of charge, but it is the understanding of the said parties, that it shall be left to the discretion of the second party, when said pump is necessary that *he* shall furnish it at *his* discretion, it being understood that the said party of the first part shall not be bound to finish said well, if the damp or gas shall arise sufficient to endanger the lives of persons employed to do such work; said party of the second part shall decide whether or not such is the case, or if it is or shall be dangerous for such hands.

Witness the hands of said parties, at Xenia, this the sixteenth day of February, A. D. 1855.

|  | WM. E. MIDDLETON. |
|  | L. L. MORGAN. |
| Witness, C. D. Brown, | WM. P. WHITTLE, |
| Wm. Elston. | By B. B. Thomas. |

Defendant objected to the introduction of said instrument as evidence; the court overruled the objection, allowed it to be read, and defendant excepted, etc.

B. B. Thomas, continuing, stated that he made two estimates of work done on Ohio and Mississippi Railroad, and returned them to Whittle, and I suppose they should go to Walker, engineer in chief; believe work was done by plaintiff on well. Witness said he remembered no payment, but presume he made a payment; might have taken a receipt and it might have gone to Whittle; *I received the money from him,* Whittle; was not properly the *person to pay money* for said company, on said work. Witness had made payments several times for Whittle on contracts for Ohio and Mississippi Railroad Company, and other payments; Mr. Whittle told me to do so; paid some on trestle work for the company, I believe, of money received from Whittle. To all which testimony defendant objected, and moved court to exclude it, but court overruled motion, and defendant excepted.

There was a verdict for $635; remittitur of $332 by plaintiffs; motion for a new trial, and in arrest, overruled by the court, and judgment entered for plaintiffs for $303, to all of which defendants excepted.

Errors assigned:

The court erred in admitting testimony objected to by defendants below.

The court erred in refusing to sustain motion of defendants below to exclude evidence.

The court erred in entering judgment for plaintiff below, against defendants below.

The court erred in proceeding to trial without issues on defendants' special pleas.

Wherefore, etc., plaintiff in error prays that the same be set aside, reversed, etc., and judgment arrested, etc.

Isham N. Haynie, for Plaintiff in Error.

S. L. Bryan, for Defendants in Error.

Walker, J. The appellant urges the reversal of this judgment upon the ground that the appellee's replication is no answer to appellants' special pleas. The declaration counted on a contract of appellant, and the filing of the general issue put the appellees upon the proof of the contract declared on, or under the common count, the proof of a contract of appellant, either express or implied. They could not recover on the contract of another person. These pleas alleged that the work

41

sued for was performed under a contract with Whittle. If these pleas amount to anything, it is an argumentative denial that the contract sued on was that of the defendant, and that fact was directly traversed by the general issue. These pleas, only in a different form, traversed what had been put in issue by the plea of non-assumpsit, and the replication only reaffirmed what had been averred in the declaration. And whether it was an answer to the pleas or not, could make no difference, as neither it, or the pleas, in the slightest degree changed the right of either party, under the issue already formed. And the appellant having proceeded to trial under this replication tendering an issue to the country, and having failed to demur or to move to strike it from the files, must be held to have admitted its sufficiency. This objection is not well taken.

It was again objected that the agreement was improperly admitted in evidence under the declaration in this case, because it was not signed by the company. It is a rule of pleading, that in declaring on a contract executed by an agent, that the contract may be described as having been signed by the principal himself, or as signed by his agent for him. *Nickleson* v. *Croft*, 2 Burr. R. 1188–9. It then becomes necessary to determine whether this contract was that of the defendant, or that of Whittle. It seems, from the evidence in the case when taken together, that the intention of the parties was to bind the company, and not Whittle.

But it is insisted that the court could not receive extrinsic evidence to explain that intention, and that the instrument alone could determine the question. The principle is familiar, that the contract made by the agent as such, is the contract of his principal, and that the former is the instrument by which the contract is effected, and he is not clothed with any legal interest in it, which can render him responsible on the agreement, although in some instances he may sue in his own name. 1 Chit. Pl. 34. And it has been held, that where an agent fails to disclose that he is acting merely as an agent, and the principal is unknown, the latter may, when discovered, be sued on the agreement. 1 Chit. Pl. 39. To bind the principal by the contracts of his agent, it is not material whether they are verbal or in writing, unless required to be in writing by the statute of frauds, the question being, to whom was the credit given, to the agent or to the principal. If, from the agreement itself, it clearly appears that the intention was to bind the agent and not the principal, the agent is held to be liable. But when from the whole instrument there is doubt whether it was the intention to bind the principal or the agent, courts have held that extrinsic evidence may be received to ascertain the intention.

In the case of *The Mechanics' Bank* v. *The Bank of Columbia*, 5 Wheat. R. 326, the Supreme Court of the United States held, where the cashier of the Mechanics' Bank had drawn a check on the Bank of Columbia, signed by him, in his own name, without any addition to indicate that he signed it officially, that as it was doubtful on its face whether it was an official or a private act, parol evidence was admissible to show that he signed it in his official character. In that case the circumstances appearing on the face of the check, which must have been relied on to create the doubt, were, the making it payable *to order* instead of *to bearer*, and its bearing date, " Mechanics' Bank of Alexandria," as there is nothing else distinguishing it from ordinary checks drawn by individuals. The court say, " The only ground on which it can be contended that this check was a private check, is, that it had not, below the name, the letters *cas.* or *ca.* But the fallacy of the proposition will at once appear from the consideration, that the consequence would be that all of Paton's checks must have been adjudged private. For no definite meaning could be attached to these letters without the aid of parole testimony.

" But the fact that this, on its face, appeared to be a private check, is by no means to be conceded. On the contrary, the appearance of the corporate name of the institution on the face of the paper, at once leads to the belief that it is a corporate and not an individual transaction ; to which must be added the circumstances that the cashier is the drawer, and the teller the payee ; and the form of ordinary checks deviated from by the substitution of *to order* for *to bearer*. The evidence, therefore, on the face of the bill, predominates in favor of its being a bank transaction," etc. " But it is enough for the purposes of the defendants to establish that there existed, on the face of the paper, circumstances from which it might reasonably be inferred that it was one or the other."

" It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing on the face of them to have been done in the exercise of their agency. In the more solemn exercise of derivative powers, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1st, That the act was done in the exercise ; and 2nd, Within the powers delegated. The facts are necessarily inquirable into by a court and jury, and this inquiry is not confined to written instruments," etc. " But to any act with or without writing, within the scope of the power or confidence reposed in the agent."

The agreement in the case under consideration, certainly presented on its face as many circumstances to indicate that it was the agreement of the defendant, or to create a doubt as to whether it was theirs, or was that of Whittle, as the case in the *Mechanics' Bank* v. *The Bank of Columbia.* This instrument describes Whittle as the " resd " engineer of the road. Again, the plaintiffs agree and bind themselves to dig a well for the use of the company, at the side track to be laid by the party of the second part or his assistant, at Middleton depot; the wall of the well was to be built as directed by the engineer in charge of the work, and in another portion of the contract plaintiffs agree to dig and wall the well as required by the engineer. If this language in the agreement does not bear the construction, that the contract was entered into on behalf of, and with the intention of, binding the company, it most clearly leaves it in doubt, whether it is their contract or that of Whittle. And viewing it either way, it was not error to receive parol evidence to explain what was intended by the parties. It is true, that the name of the company was not signed to it; but we have seen by the case of the *Mechanics' Bank* v. *The Bank of Columbia,* that the want of their signature can make no difference, when it appears from the instrument to be their contract, or when it is from its face left in doubt, and extrinsic evidence shows it to have been entered into on their behalf by their authorized agent. And that such signature was not material, was held in the cases of *Hodgson* v. *Dixter,* 1 Cranch R. 345 ; *Bank of Columbia* v. *Patterson's Administrator,* 7 Cranch R. 299 ; and *Randall* v. *Van Vechten et al.,* 19 J. R. 60.

Thomas testifies, that Whittle, when he gave him instructions in regard to closing this contract with appellees, said the chain-pump was to be furnished by the company, and that he believed Whittle directed him to sign his name on behalf of the company. James Higgins testified, that Wyman, the paymaster and agent of the company, told Middleton to come to Xenia, and he would send an engineer and have the work measured and settle for it. Pleasant Middleton testifies, that a man, whose name he did not know, was at Salem settling and giving notes, and seemed to be acting as agent in settling debts for the company, offered to give Middleton two hundred dollars and settle the matter. Charles Higgins testifies, that a man, whose name he did not know, came on the cars, and left a force pump, to be put in the well. D. J. Middleton testified, that a man came and measured the well, and left. All of these circumstances seem to render it almost certain, that the company considered the contract as made with them and not with Whittle. But it is not material whether they were legally bound by the contract when

it was made or not, even if Whittle had no authority to bind them by the agreement, the work was performed for them, and they by their various acts adopted and ratified the contract. Had they not ratified it, then his authority should have been shown, to have held them liable. 19 John R. 60.

The objection, that Whittle could not delegate his authority to Thomas, may be disposed of in the same manner. The ratification of the contract waived that objection, even if it had been well taken, which we by no means admit. As Thomas in closing this contract exercised no discretion, but only followed the instructions given him by Whittle. And in doing so, he was no more than Whittle's scrivener to draw the contract, and procure the signatures of appellees. And having only followed the specific directions of Whittle, he cannot be said to have had power delegated to him by the agent of the company. If so, every employee and common laborer of the company, who does not make his contract with the directors, acts under a delegated power from their agents, and this will not be claimed.

Besides all this, the whole of the circumstances of this case, from the time the contract was entered into to the time suit was brought, together with the question of authority of the agent, the ratification of the contract and the reception of the work, were, by the instruction of the judge who tried the case, left to the jury, and the evidence warranted their finding. For these various reasons the judgment should be affirmed.

*Judgment affirmed.*

Justice BREESE having tried this cause in the court below, took no part in this decision.