Follett, J.
The plaintiffs aver that the defendant from time to time has received to and for the use of the plaintiffs several sums of money specified and set forth in tabular statements ; and that the several sums so received were for freight charges in excess of legal rates.
It is admitted that the amounts charged were paid.
The matters set up in the first defense were disposed of by this court in Campbell v. M. & C. R. R. Co., 23 Ohio St. 168; by holding: “ Where the railroad of one company is purchased by another railroad company, in pursuance of a statute authorizing the purchase, in the absence of any provision of law to the contrary, the road passes to the purchasing company subject to the same restrictions and limitations as to rates chargeable for transportation as attached to it in the hands of the vendor.” And section 12 of the act of February. 11,1848 governs this case.
In that case this court also held that : “Where a railroad company is authorized to demand and receive compensation for transportation of property 1 not exceeding five cents per ton per mile, when the same is transported a distance of thirty miles or more, and in case the same is transported for a less distance than thirty miles, such reasonable rate as may be from time to time fixed by the company,’ it is unreasonable as a matter of law, that the company should fix a greater sum for a less distance than thirty miles than the maximum allowed for full thirty miles.”
In Smith v. P. Ft. W. & C. Ry. Co., 23 Ohio St. 10, this court also held : “ Whether the rate oí passenger fare fixed by a railroad company under section 12 of the act of February 11, 1848, (S. & C. 271), for distances less than thirty miles, *284 be reasonable or not, is a question of fact for the jury, to be determined under such instructions by the court as the circumstances of the particular case may require.”
In that case Mcllvaine, J., said : “ Whenever, therefore, the determination of the question whether the rate be reasonable, involves the necessity of hearing testimony, it falls within the province of the jury.” We think the reasonableness of freight fare may be determined in the same manner.
In this case the special master heard the testimony and found the facts, and also reported the evidence, and from the peculiar facts of the case the master found a certain amount due for “ the payments in excess of rates authorized by law and the court below, from the same evidence, found the same facts, and added interest to that amount and found a definite sum. These findings seem conclusive; and, whether or not these particular findings be before this court for review, the majority of the court think there was no error in finding that such payments were for charges in excess of rates authorized by law. The defendant should have known what were legal rates and should have charged no more.
The plaintiffs have paid to defendant these illegal charges— money unjustly obtained; and the remaining question is, can the plaintiffs recover back the same ?
The defendant denies the plaintiffs’ right to recover back, on the ground that these illegal charges “ were so paid voluntarily^ after the services for which the same were demanded had been fully rendered and performed,” &c.
The plaintiffs paid the charges for each month at the end of the month, and as the plaintiffs and defendant did not stand on terms of equality, they so paid to secure transportation for the succeeding month.
The defendant prescribed its own rates, and would carry the plaintiffs’ freight only at the established rates, though these rates were illegal and unreasonable, and when, as á common carrier, it should have carried this freight at legal rates. The special master found that, “ the sums exacted were illegal and unauthorized, and plaintiffs were required to pay the same to procure the transportation of their property, without which, *285 tlie plaintiffs, in each of said cases, by reason of tbe character of their manufacturing business, would have suffered great loss.”
The defendant did not require the payments to be made in advance of carrying each shipment of freight, but the charges of each month were required to be paid at the end of the month or future freight would not be carried.
Plaintiffs could compel the defendant to carry their freight only by a resort to the courts and at the end of litigation. The history of these suits, begun in 1867 and just ending in 1884, shows that plaintiffs could not obtain speedy and adequate redress, such as would save their business and prevent loss, simply by a resort to the courts to enforce legal rights. And as defendant would not accept the payment of legal rates, and required the full payment-of its illegal charges, the plaintiffs, complaining and objecting to the increased and illegal charges, were forced to pay them. Their choice and volition were compelled. Such payments are not voluntary. We will refer to some of the authorities ánd reasons of this position.
“ The common principle is that if a man chooses to give away his money, or to take his chance whether he is giving it away or not, he cannot afterwards change his mind; but it is open to him to show that he supposed the facts to be otherwise or that he really had no choice.” Pollock’s Principles of Contract, 523. These plaintiffs “ really had no choice.”
In 1760, in Moses v. Macfarlan, 2 Burr. 1005, Lord Mansfield said: “ This kind of equitable action, to recover back money which ought not, in justice, to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, ex aequo et l>ono, the defendant ought to refund ; . . . But it lies for . . . money got through . ... an undue advantage taken of the plaintiff’s situation, contrary to laws made for the protection of persons under those circumstances.”
The plaintiffs paid this money in like situation.
In Parker v. Great Western Ry. Co., 7 M. & Gr. 253, the court held that payments made to a common carrier to induce it to do what by law, without them, it was bound to *286 do, were not voluntary, and might be recovered back. Addison on Contracts, *1043, approves this principle. Mr. Justice Matthews, in Swift Co. v. United States, 111 U. S. 29, approves the doctrine, and calls it a “ wholesome principle.” And in Baker v. City of Cincinnati, 11 Ohio St. 558, Gfholson, J., approves the same authority. In Maxwell v. Griswold, 10 How. 242, the court said : “ Now it can hardly be meant, in this class of cases, that to make a payment involuntary, it should be by actual violence or any physical duress.”
In the case of Railroad Co. v. Lockwood, 17 Wall. 379, Mr. Justice Bradley says: “ The carrier and his customer do not stand on a footing of equality. The latter is only one of a million. He cannot afford to higgle or stand out and seek redress in courts. His business will not admit such a course. He prefers rather to accept any bill of lading or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases he has no alternative but to do this, or abandon his business.”
In Beckwith v. Frishie, 32 Vt. 559-566, it was said : “ To make the payment a voluntary one, the parties should stand upon an equal footing.”
This is not a case of individuals dealing with each other on terms of equality ; nor a case of payment of illegal charges to obtain possession of property; nor payment of illegal taxes to prevent the sale of property. ■
Here, the defendant was a common carrier of such freight as plaintiffs had for transportation ; the state had given the defendant, through its purchase of this part of its road, its right to use this road, and had limited its rate of charges. The plaintiffs’ business was dependant on transportation by the defendant, and they were entitled to have their freight carried at legal and reasonable rates. The defendant prescribed rates illegal and unreasonable, and required its agents to demand and receive such rates, or not carry the freight.
Plaintiffs, objecting and protesting against the basis and the amount of the changes, paid them at the end of each month, and they so paid the illegal charges to procure the future carriage of their freight.
*287 The case of Swift Co. v. United States, 111 U. S. 22, is very much like this. There the commissioner of internal revenue had acted upon a wrong basis in charging for stamps for friction matches. The Swift Co. gave orders for stamps and paid for each purchase within sixty days from the delivery of the stamps; and thus dealt from 1870 to 1878. No protest had been made by the company, though years before, in 1866, a member of the company “ made repeated protests to the officers of the Internal Revenue Bureau against its methods of computing commissions,” in similar cases.
The court held : “ A course of business and a periodical settlement between the commissioner of internal revenue and a regular periodical purchaser of revenue stamps entitled by statute to commission on his purchases payable in money, which shows that the commissioner asserted and the purchaser accepted that the business should be conducted upon the basis of payments of the commissions in stamps at their par value instead of in money, does not preclude the purchaser from asserting his statutory right, if he had no choice, and if the only alternative was to submit to an illegal exaction or discontinue his business.” And the court also held : “ When the commissioner of internal revenue adopted a rule of dealing with purchasers of stamps which deprived them of a statutory right to be paid their commissions in money and obliged them to take them in stamps, and made known to 'those interested that the rule was adopted and would not be changed, the 'rule dispensed with the necessity of proving, in each instance of complying with it, that the compliance was forced.” Mr. Justice Matthews said: “No formal protest, made at the time, is, by statute, a condition to the present right of action, as in cases of action against the collector to recover back taxes illegally exacted :” and the court did not require any protest. The rule was adopted by the commissioner, and would not be changed on further application ; and business could be transacted only on that footing ; and they paid within sixty days. Mere the rates were fixed by the defendant, and the shipper must pay or forego shipment; and plaintiffs paid within thirty days. In principle the cases are alike. In McGregor v. Erie *288 Railway Co., 35 N. J. Law 89-113, plaintiff recovered back from defendant certain moneys unlawfully demanded and taken for transportation of merchandize from Paterson to Jersey City. Bedle, J., having cited certain cases, said : “ In these cases there was an express refusal, but I do not consider it necessary that the refusal should be express. It is sufficient if the person has just and reasonable ground to apprehend, that unless the money is paid his goods will not be carried, or .will be withheld. Where a corporation or person has the power to refuse a right to which a party is entitled, unless he complies with an unjust demand, they do not stand on an equal footing.” And the court held : “ J3ut when they are not on an equal footing and money is paid, not by compulsion of law, but by compulsion of circumstances, as when it is paid to release goods from illegal restraint, which cannot otherwise be reasonably effected, or to compel the performance of a duty by others in order to enjoy or obtain a right, it may be recovered back. Under this head may be classed moneys paid under color of title or charges on turnpikes and railroads.”
“ Courts will not be illiberal in allowing a person to act upon his reasonable apprehension of such refusal, where the circumstances fairly show that unless he does so submit to the demand, his right will be withheld.”
In Lafayette & Indianapolis R. R. Co. v. Pattison, 41 Ind. 312, the excessive charges were recovered back. The syllabus contains the following : “ During the rebellion, A. had a contract to furnish the government with a certain number of beef cattle during two months, and for the purpose of filling such contract went to Chicago and made a contract with a railroad company to ship cattle for him to Indianapolis at sixty-five dollars per ear ; and, leaving an agent to ship, he returned to Indianapolis to receive the cattle. The cattle of the first shipment of two ear loads were sent to the cattle yard of A., and after a few days a bill for two hundred and one dollars and two cents was sent to A., which he refused to. pay, and informed the agent of the railroad company that he had a contract for the shipment at sixty-five dollars per car; the agent denied knowledge of any such contract, and insisted that *289 the bills must be paid as presented, and that he would not deliver any future car loads of cattle until the freight was paid, as he made it up from the way bills, and that the bill included other things besides freight, which he could not itemize. It was agreed that A. should pay under protest and also future freight, and the cattle should be delivered as they arrived, and A. should reserve the right to recover any sum so paid unjustly. In pursuance of this agreement, the agent delivered the cattle at the yard of A. as they arrived from time to time, and as soon as the bills were prepared they were paid by A.: Held, that the payments were not voluntary, and that A. could recover all sums so paid in excess of his contract price.” And Bustirk, J., says: “ We are of opinion that the money so paid could be recovered back if there had been no valid agreement that ’ it might be. While the appellants were not in the actual possession of the cattle of the appellee, they possessed such power and control over the shipment and delivery thereof as gave them an undue advantage over the appellee, and the necessity of the appellee was so gréat and pressing as to deprive him of the freedom of his will.”
The case of Chicago & Alton R. R. Co. v. C. V. & W. Coal Co., 79 Ill. 121, is as follows :
“ 1. Certain individuals constructed a railroad twelve miles long, extending from a coal mine, belonging to a coal company, to a station on the Illinois Central Railroad, and, on April 30, 1869, they sold the same to a railroad company and turned it over to them, and, on the same day, the company purchasing turned it over to another railroad company. The last named company operated the road in pursuance of the contract of sale between the first owners and the purchasers from them, for three years, complying with the terms of said contract as to rates of freight to be charged to the coal company for transportation of its coal. The individuals building and selling the road, and the coal company, were the same. Held : that the railroad company last purchasing, by taking the road and recognizing the rates of freight established by the contract of sale, adopted the contract, and were bound by its *290 terms, and that the coal company could maintain an action against them for a breach of it.”
“ 2. In such case, where the coal company had no other outlet for its coal, and the railroad company exacted more freight than, by the terms of the contract, they were entitled to, the coal company should be considered as under a kind of moral duress, and the payment by them of the freight demanded, under such circumstances, cannot be considered voluntary, and they would have the right to sue upon the contract and recover back the excess of freight paid over the contract rate.”
Mr. Justice Broese said : “ It can hardly be said these enhanced charges were voluntarily paid by appellees. It was a case of ‘life or death ’ with them, as they had no other means of conveying their coals to the markets offered by the Illinois Central, and were bound to accede to any terms appellants might impose. They were under a sort of moral duress, by submitting to which, appellants have received money from them which, in equity and. good conscience, they ought not to retain.”
In Mobile & Montgomery Ry. Co. v. Steiner, 61 Ala. 559, illegal charges for transporting cotton were recovered back. The court held : “ The nature of the business considered, the shipper does not stand on equal terms with the carrier, in contracting for charges for transportation ; and if the shipper pays the rates established in violation of law by the carrier, rather than forego his services, such payment is not voluntary, in the legal sense, and the shipper may maintain his action for money had and received, to recover back the illegal charge.”
To the objection that the payments were voluntarily made, and, therefore, could not be recovered back, Stone, J., said: “ Railroads have so expedited and cheapened travel and transportation ; have so driven from their domain all competing modes of transportation, that the public is left no discretion but to employ them, or suffer irreparable injury in this age of steam and electricity. They have their established rates of charges, and these the shipper must pay, or forego their facilities and benefits. To object or protest would be an idle waste *291 of words. The law' looks to the substance of things, and does not require useless forms or ceremonies. The corporation and the shipper are in no sense on equal terms, and money thus paid to obtain a necessary service is not voluntarily paid, as the law interprets that phrase.”
The above citations are sufficient.
The foregoing principles 'and authorities show, that the payments made in this case should not be regarded as voluntary, and that no principle of equity shown by defendant can aid the defendant in withholding from plaintiffs the money so unjustly obtained by the defendant.
There was error in the courts below, and this court enters judgment for the plaintiffs for the amount found by the court below, together with interest on the same from the first day of that term of court, and costs of suit.

Judgment reversed and judgmentfor plaintiffs.