# THE CHICAGO AND ALTON RAILROAD CO.

*v.*

# THE CHICAGO, VERMILION AND WILMINGTON COAL CO.

1. CONTRACT—*liability of subsequent purchaser to perform it.* Certain individuals constructed a railroad twelve miles long, extending from a coal mine, belonging to a coal company, to a station on the Illinois Central railroad, and, on the 30th of April, 1869, they sold the same to a railroad company, and turned it over to them, and, on the same day, the company purchasing turned it over to another railroad company. The last named company operated the road in pursuance of the contract of sale between the first owners and the purchasers from them, for three years, complying with the terms of said contract as to rates of freight to be charged to the coal company for transportation of its coal. The individuals building and selling the road, and the coal company, were the same: *Held,* that the railroad company last purchasing, by taking the road and recognizing the rates of freight established by the contract of sale, adopted the contract, and were bound by its terms, and that the coal company could maintain an action against them for a breach of it.

2. PAYMENT—*whether voluntary.* In such case, where the coal company had no other outlet for its coal, and the railroad company exacted more freight than, by the terms of the contract, they were entitled to, the coal company should be considered as under a kind of moral duress, and the payment by them of the freight demanded, under such circumstances, can not be considered voluntary, and they would have the right to sue upon the contract, and recover back the excess of freight paid over the contract rate.

3. RAILROADS—*act to prevent unjust discrimination by, does not annul prior contracts.* The act of the General Assembly, to prevent extortion and unjust discrimination by railroads, was not designed to reach a case where a contract existed, prior to its passage, to carry on certain terms. It was not intended to interfere with or abrogate existing contracts fairly made prior to its passage.

4. MUTUALITY OF CONTRACT—*as to transportation of freight.* By the terms of a contract of sale of a railroad, the purchaser was to carry certain freight for the seller at certain stipulated rates, with a proviso that the seller should enter into a written contract binding himself to give to the purchaser the transportation of all such freight: *Held,* that the execution of such a written contract by the seller was not a condition precedent, and that, if the purchaser and seller both acted upon the original contract of sale without any request or demand for such written con-

tract, they would both be bound by the terms of the original contract, the one to carry at the stipulated rate, and the other to give the transportation of all such freight to the carrier.

APPEAL from the Superior Court of Cook county.

Mr. GEORGE W. SMITH, for the appellant.

Messrs. WALKER, DEXTER & SMITH, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was assumpsit, in the Superior Court of Cook county, in which a recovery was sought on the following facts:

Prior to April 30, 1869, certain individuals had, through and by one Oliver Young, contractor, constructed a railroad, extending from Streator, the center of a coal region, on the Vermilion river, in LaSalle county, to Wenona, in Marshall county, situate on the Illinois Central railroad. On April 30, these parties sold this road to the St. Louis, Jacksonville and Chicago Railroad Company, for a valuable consideration agreed upon and paid. An instrument in writing, called a memorandum of this contract of sale, was executed by these parties, on the fourth clause of which this controversy arises. That clause is as follows:

"It is hereby mutually agreed between the parties, that all coal, at any and all times hereafter carried from the mines of the Vermilion Coal Company, at Streator, to the town of Wenona, for the use of that town and its vicinity, or for delivery to the Illinois Central Railroad Company for the use of that company, or for further transportation on its line of railroad, shall be carried over the railroad herein provided to be conveyed, at the price of three dollars for every car load of ten tons capacity, so carried: *Provided, however*, that this article shall not be in force unless the Vermilion Coal Company shall, at their own proper cost and expense, furnish and provide all the coal cars necessary and proper for their use, charging no mileage for the use of the same, and

that said Vermilion Coal Company shall enter into a contract with said first party, binding itself to give to said first party, at all times hereafter, the transportation of all coal from their mines at Streator, destined to the town of Wenona, and to the Illinois Central Railroad Company, as aforesaid."

The persons who built this road from Streator to Wenona, represented the Vermilion Coal Company, which association furnished the money to build it, and to whom was paid the consideration received from the St. Louis, Jacksonville and Chicago Railroad Company, on the sale thereof to them, and their officers executed this agreement. Up to March 16, 1870, the coal company operated this road, when, on that day, it was turned over to the railroad company above named, which company, on the same day, turned it over to the Chicago and Alton Railroad Company, appellants, since which time it has been operated by that company.

It is admitted that appellees are the same as the Vermilion Coal Company.

From this date, March 16, 1870, the Chicago and Alton Railroad Company, appellants herein, up to and until June 30, 1873, carried, from Streator to Wenona, the coal delivered to it by appellees, at the rate of three dollars per car, and there were more than three hundred cars so carried, appellees furnishing their own cars, the service of appellants consisting in hauling the cars over this road.

In the following months of July, August, September and October, 1873, appellees shipped by this road of appellants, two hundred and seventy-nine cars of coal, to be carried from Streator to Wenona, appellees paying therefor to appellants, for such transportation, nine dollars per car, they being appellees' own cars, which amounted to the sum of two thousand five hundred and eleven dollars, the excess over three dollars per car amounting to sixteen hundred and seventy-four dollars.

It is for this excess over three dollars per car, this action is brought, declaring upon the agreement, with the common

counts, and the only question is, are appellees entitled to recover this amount, under this state of facts?

The issue was tried by the court without a jury, and there was a finding and judgment for the plaintiffs for this excess.

The defendants appeal, and insist the evidence does not establish a contract between these parties. They insist there was no contract in writing between them—that none can be implied from the acts of the parties.

It is not contended by appellees that any contract in writing was, at any time, actually executed between them and appellants in their own corporate names. The true question is, are these parties in such relation to the parties who actually made the contract, as to entitle appellees to an action upon it? In other words, can appellees claim to be such beneficiaries, under this contract, as to entitle them to an action for its breach?

The parties who made the agreement of April 30, 1869, were the individuals who composed the Vermilion Coal Company. By it, a sale of a railroad which they had constructed, twelve miles in length, for the purpose of conveying coal from Streator to Wenona, was agreed upon with a railroad corporation known as the St. Louis, Jacksonville and Chicago Railroad Company. The contract of sale was not fully completed until March 16, 1870, when the road was duly transferred to this railroad company, who, on the same day, turned it over to the appellant company.

It is admitted appellees are the same as the Vermilion Coal Company, and that the contract was made for the benefit of the latter company, seems evident, from the fact that, in the agreement for the sale, the side-tracks of the road sold were to remain the property of the Vermilion Coal Company. This company adopted and ratified the act of the parties making the sale, received the consideration paid therefor, and in all respects assumed to be parties to the contract.

The facts are sufficient to show that the individuals who made this contract with the Jacksonville railroad company

were acting for the benefit of the Vermilion Coal Company, whether with authority or not is immaterial, as the coal company adopted their act and performed the stipulations of the contract so made.    To this effect is the case of *The Ohio and Mississippi Railroad Co.* v. *Middleton*, 20 Ill. 629; Story on Agency, secs. 255, 259.

It is very clear a contract in writing was made which was adopted by appellees, by which the Jacksonville road was bound to carry the coal of appellees according to its terms.

But appellants claim, if this be so, no contract exists between appellees and appellants of like import, either by implication or otherwise.

It appears, on the day (March 16, 1870,) the road was turned over to the Jacksonville company, it was, on the same day, turned over to the appellant company.    There is not, in the deed of transfer, any covenant that appellants shall perform all the obligations assumed by the Jacksonville company to the coal company, but, from the day of the transfer to July 1, 1873, more than three years, appellants did carry appellees' coal from Streator to Wenona, over this road, at three dollars per car, the coal company furnishing the cars. Up to this time it was not questioned appellants were bound to carry for three dollars a car, although their superintendent complained the contract was too low, yet that he felt bound to carry it out.    Appellants placed their own construction upon this contract, and of their obligations under it, by carrying coal for three years.    By doing this, they expressly assumed the contract of the Jacksonville company.    If the price for transportation was low, that fact may have been one of the chief inducements of the coal company to sell to the Jacksonville company, but in fact to appellants, as the former company transported no coal.    The transaction would seem to have been for the use and benefit of appellants.

It seems to us, appellants, when they came into possession of this road, and commenced to carry appellees' coal for three dollars per car, demanding no more, when the regular

price was nine dollars per car, and so continued more than three years, put a construction upon their obligations, which they can not now avoid; they must be held estopped by their own act and conduct. These facts go strongly to show they adopted the contract of the Jacksonville company, and came under all its obligations.

Although appellees are not named in the contract, they can become beneficiaries under it, and have an action for its breach. *Eddy* v. *Roberts*, 17 Ill. 505; *Brown* v. *Strait*, 19 ib. 89; *Bristow et al.* v. *Lane et al.* 21 ib. 194, where numerous cases are cited on the point.

As we have said, and the case shows, appellants carried the coal of appellees at three dollars per car, up to the first day of July, 1873, from and after which time they demanded and received of appellees nine dollars per car, appellees furnishing the cars. On that day, an act of the General Assembly, to prevent extortion and unjust discrimination by railroad companies, went into effect.

This act, it was supposed by the appellants, and probably by appellees also, might interfere with the further performance of this contract, as a discrimination is made in favor of appellees, the regular rate for a car load of coal being nine dollars per car. But the president of the appellants' company objected, on the ground of there being no obligation upon his company to transport appellees' coal for three dollars per car.

This act of the General Assembly was not designed to reach such a case as this, where a contract existed prior to the passage of the act, to carry on certain terms. We do not think the law was intended to interfere with contracts, or to abrogate them. It was not intended by the General Assembly, by this law, to visit a railroad company with heavy penalties, which had, prior to the enactment, entered into a valid contract with parties for transportation of freight at a less rate than the general public was required to pay.

On this point we are referred by appellees to section 27

of chapter 114, title, "Railroads and Warehouses," page 805, R. S. of 1874, as applicable.    We are not inclined to hold that section has any application to this case.    It contemplates contracts of a different nature, and affects those corporations only which have adopted the act in question, which it is not shown appellants have done.    The true ground on which to place the case is, that the act against discriminations was not intended to annul contracts fairly made prior to its passage.

Appellants insist that the mere fact appellants carried for three dollars per car for three years and more, furnishes no evidence they were obliged to carry at that rate for all time, and asks, does a merchant who sells to a customer, during a term of years, an article at a certain price, intend to become bound to continue to sell at the same price during the pleasure of the customer?    And does a manufacturer, who pays workmen a certain standard of wages for a long period of time, thereby exhibit a purpose to preclude himself from making a reduction in such wages?

The instances put are hardly apposite, but if a manufacturer takes into his service a laborer at certain stipulated compensation per month, he would be obliged to pay that compensation until another contract was made.    So with the merchant: if he sells certain goods to a customer at a certain price, he would be bound by the agreement so long as the customer traded with him, unless the customer be specially notified he can no longer have the goods at the agreed price. But this case is different in principle.    Here, the road was constructed by the coal company for the purpose of carrying their coal to market.    It was the only means the company had by which to reach the markets on the Illinois Central railroad.    In their hands, it was a certain outlet, and a cheap one.    Their object in transferring it to another railroad company having important connections, was the same, furnishing facilities for marketing their coal, and it was but reasonable there should be a stipulation in the contract of sale that they should be liberal.    This, it may well be supposed, was the

governing motive in the sale, or at least one of the principal objects. In the contract with the Jacksonville company by name, but really with appellants, no time is limited for the duration of this contract, and it must continue, if its stipulations are performed by appellees.

But appellants contend that, if the agreement of 1869, the deed, and the act of carrying for three years, raise the implication of a contract between these parties, then, such implied contract must be of the nature and scope of the agreement of 1869, for the reason that such agreement is the basis of the implication.

If there be a contract, it is conceded it must spring from the agreement of 1869, and because that contains this provision, "that this article shall not be in force unless the Vermilion Coal Company shall   *   *   *   enter into a contract with said party, binding itself to give to said first party, at all times hereafter, the transportation of all coal from their mines at Streator, destined to the town of Wenona, and to the Illinois Central Railroad Company, as aforesaid."

Appellants insist that this stipulation shows the covenant to carry was conditional, and never became operative, as no contract of the nature above specified was ever executed, binding the coal company, and there was no mutuality. They insist this was a condition precedent, to be performed by the coal company, and they must show it has been performed.

The answer to this is, and we think a sufficient one, that the proofs show no complaint of the non-execution of such a contract was made at any time by appellants, or any request by them that it should be made and formally executed and delivered, or any meeting of the officers of the respective companies called for such purpose, or any talk about it at any time. Appellants entered upon the performance of the contract, as expressed in the agreement, without objection, and so continued for more than three years, at no time demanding a formal contract. The only condition precedent to be performed by appellees was, furnishing the cars in which

to place their coals. Should they fail in this, it is clear appellants would not be bound to carry at the stipulated price.

Had appellants deemed it necessary and proper, in view of their own interests, to require the execution of such a contract, it was in their power so to do, and it is so provided in the seventh clause of the agreement. That clause is as follows:

"It is further hereby mutually agreed and understood, that, if it shall be deemed necessary and proper so to do, a formal contract, embodying all the covenants and agreements herein contained, may be executed between the parties," etc.

It seems clear, from this, that a request by one party or the other should be made for a more formal contract, which not being made, the inference is irresistible both parties were content to rely upon the agreement and its terms as made.

But it may be insisted, as it is, by appellees, if this formal contract was a condition precedent, it could be waived, and was waived, by appellants, they continuing to carry, under the agreement, for three years and more, without question of their liability so to do.

We do not perceive, from the condition of these parties, any necessity for any more formal contract than the agreement itself shows. There was no rival road in the direction of the Illinois Central railroad from Streator, and no possibility of shipping coals in that direction without the aid of this road, and the case shows that appellees have shipped no coals in the direction of the Illinois Central by any other route. Should the time come when appellees might avail of another route to the Illinois Central, and should avail of it, appellants would have just ground of complaint, and, doubtless, an action for damages on the agreement.

We fail to perceive any necessity for a more formal contract, and we are satisfied appellants did not deem a more formal one necessary or proper, or they would have demanded such an one preliminary to carrying. We think appellants

should be held to their own interpretation of the agreement, and that they should be considered as having waived a more formal contract.

The further point made by appellants is, there being no contract, the suit can not be maintained, or, in other words, the count for money had and received can not be maintained.

It is claimed appellees paid the additional charge of six dollars per car voluntarily, and can not recover it back under this count.

The action is brought on the agreement of April, 1869, on the theory that thereby a contract exists between these parties as successors of the original contracting parties, and we recognize this theory as correct. It can hardly be said these enhanced charges were voluntarily paid by appellees. It was a case of "life or death" with them, as they had no other means of conveying their coals to the markets offered by the Illinois Central, and were bound to accede to any terms appellants might impose. They were under a sort of moral duress, by submitting to which appellants have received money from them which, in equity and good conscience, they ought not to retain. *Ripley* v. *Gibson*, 9 Johns. 201; *Taylor* v. *Taylor*, 20 Ill. 650; *Watson* v. *Woolverton*, 41 ib. 241.

Upon the point made by appellants, that this court will not presume a contract which is opposed to the spirit of the act in force July 1, 1873, concerning railroads, we have said we are not of opinion that act was designed to annul contracts fairly made prior to its enactment.

On the whole case, we are of opinion appellees have maintained their right to recover back the excess paid for carrying their coals, and affirm the judgment of the Superior Court.

*Judgment affirmed.*