## Henry Rees, Appellee, v. Gerhard Schmits et al., Appellants.

1. PUBLIC POLICY—*when guilty party aided as against another guilty party.* If inequality of guilt exists, as, for instance, where one party is by moral duress coerced into participation in illegal transactions, equity will grant relief at the instance of the party so coerced.

2. DURESS—*what constitutes.* Notwithstanding a party may not have been actuated by any apprehension of imminent danger to his life, limb or liberty, duress may be established by a showing of oppression, imposition, undue influence or the taking of undue advantage of financial stress.

Appeal from the Circuit Court of Adams county; the Hon. A. AKERS, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed October 14, 1911. Rehearing denied December 8, 1911.

FRED G. WOLF and HUBBARD, SCHMIEDESKAMP & GROVES for appellants.

GOVERT & LANCASTER, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal by the defendants from a decree of the circuit court granting the relief prayed by a bill in equity, which charges, in substance, that the

city of Quincy, pursuant to an ordinance theretofore adopted, let to the complainants, as lowest bidders, contracts for the construction of a certain sewer; that said sewer was constructed by the complainants in substantial compliance with the ordinance and contracts; that on June 1, 1910, there was a balance due complainants on the contract price in excess of $17,000 which remained due and unpaid; that on that day the defendants to the present bill, filed in the circuit court of Adams county their bill in chancery, to which complainants, the county treasurer, and the board of local improvements, treasurer, comptroller and clerk of said city of Quincy were made parties defendant; that summons was duly issued and served, the defendants answered, and the cause proceeded to a hearing; that by said bill it was charged specifically that certain of the provisions of the ordinance, specifications and contracts between the complainants and the city of Quincy were not complied with; that in addition to the sum claimed to be due upon said contracts, the complainants demanded the sum of $1400 in payment for timbers used in bracing walls of the trench of said sewer, and which had been allowed to remain therein; that the payment of said extra claim would constitute a fraud upon the taxpayers; that said sewer had not been constructed substantially according to said ordinance, and constituted a different improvement from that provided for by said ordinance; that the sum of $15,-194.29 remaining unpaid upon the contract price, was no more than sufficient to cause said sewer to be so changed and constructed as substantially to comply with the ordinance and specifications; that the complainants were the owners of lots along the line of, and assessed for said sewer, and general taxpayers of the city of Quincy, and that said bill prayed that the city of Quincy be permanently restrained from paying said sum of $1400 extra for planks and timbers, and from

accepting said sewer, and that the defendants be restrained from collecting said tax on the property of the complainants until the said sewer was constructed according to the ordinance. The present bill further charges that the allegations in such former bill that the sewer was not constructed substantially in compliance with said ordinance and specifications, and constituted another improvement, were false and untrue; that the complainants had been compelled to borrow large sums of money in order to complete said sewer, and at the time of the hearing of said cause were heavily indebted and had no means other than the sum due from said city, with which to re-pay said loan; that in the event that the payments from said city were long delayed, they would be financially ruined; that defendants Shanahan, Hummert and Simons, with full knowledge of such facts, wickedly and maliciously and with the intent to injure and extort a large sum of money from the complainants, on July 26, 1910, during the hearing of said chancery proceeding, represented to the complainants that unless they paid to said three defendants, or one or more of them, a large sum of money, the same would be prosecuted in both the circuit and appellate courts, and that in that event the complainants would not receive the money from the city for three or four years; that said defendants further represented to the complainants that there were defects in said sewer known to them, but not known to the complainants, which would prevent them, the complainants, from recovering from the city; that all of said representations were to the knowledge of said last named defendants, false and untrue; that said three defendants represented to complainant Henry Rees, that if he would pay to them the sum of $1653 they would procure the dismissal of said chancery proceeding, pay the special assessment against the lots owned by the complainants in said bill, and endeavor

to secure the acceptance of the sewer by the city at an early day, and the payment therefor to the complainants; that complainant, Henry Rees, under duress and fear of being broken up financially and ruined in business affairs in case said suit was prosecuted and such payment delayed, accepted said proposition, and paid to said Shanahan and Simons $1289 in cash and gave a check to Shanahan for $364, which check was to be retained by Shanahan until the balance was paid to the complainants by the city, under said contract.

The bill further charges that complainant, Henry Rees, made said payment and gave said check for the purpose only of securing an early payment from the city of Quincy and not for any indebtedness due to the defendants or any of them; that the sum paid is in excess of the special tax against the premises of the complainants in said former suit; that such excess was used for the benefit of the complainants in said chancery proceeding; that part of the complaining taxpayers had paid some part of their tax to said Simons, but complainants were unable to state the names or amounts so paid, and did not know the extent to which any one of the defendants herein had been benefited by the payment made by the complainant Henry Rees; that the chancery proceeding was dismissed in pursuance of said agreement, on July 27, 1910; that said sewer had not yet been accepted, nor had anything been paid complainants on the construction thereof, since the institution of said chancery proceeding. The bill concludes by making all parties to said chancery proceeding defendants, and prays the discovery of the amounts paid to the complainants in said cause or for their benefit out of said sum of $1289, and that the check given by Henry Rees to Shanahan be cancelled and returned, and that complainants may have said sum of $1289 repaid to them by the defendants to whom or for whose benefit the court may find same to have

been paid, and have such other and further relief as equity may require. The answer of the defendants to the present bill reaffirms the allegations of their former bill, and avers that said special tax could not be legally collected and that the settlement with the complainant was equitable, and denies that said sewer was constructed in substantial compliance with the ordinance. It denies that the complainant and Frank Rees were in financial difficulties or that the defendants, or any of them, had any knowledge of their so being, and avers that on the contrary, they were worth about $35,000, including various pieces of real estate clear of encumbrance. It further denies the use of any duress in the settlement in question, and alleges that the complainants have an adequate remedy at law.

The evidence discloses that the city of Quincy entered into two contracts with the complainants, Henry Rees and Frank Rees, for the construction of a sanitary sewer pursuant to an ordinance theretofore enacted; that they undertook and completed said sewer; that during the course of the work Henry Rees purchased the interest of his brother Frank Rees; that when the work was completed, there remained nominally due to the complainants from the city, under the contracts, over $15,000, which sum was, however, actually due to Henry Rees alone; that complainants also claimed the sum of $1400 for lumber used by them in shoring the walls of the trench and by the board of local improvements ordered left therein; that in the fulfillment of the contracts in question and other work undertaken by him, the complainant, Henry Rees, had contracted an indebtedness to a bank and material men and others, amounting to over $30,000. The evidence adduced by the complainants tended to show that his real and personal property was insufficient at its full value, to defray such indebtedness, and that such fact was known to the defendant Simons, and that at his in-

stance, he and the other defendants filed the bill in chancery mentioned in the present bill.

The evidence further discloses, that a temporary injunction was issued in accordance with the prayer of such bill, but later dissolved, but that the city refused to make further payments upon the contracts until the questions raised by the bill in question were finally determined. One Heckenkemp testified that several days prior to the time set for the hearing of the issues upon the former bill, the defendant Simons told him that the case was coming up, and that there was a chance to settle it; that if the complainant Henry Rees was willing to pay him, Simons, $1,000, he would drop the matter; that on the following day the defendant Hummert informed him that the case could be settled for $1500. Frank Rees, one of the complainants in the present bill, testified that on the day of the hearing, Simons asked him to talk to the complainant, Henry Rees, and have him settle the suit; that he, Simons, would settle for $1350; that if the suit proceeded to trial it would ruin the complainant, Henry Rees. The complainant, Henry Rees, testified that later on the same day, the defendant Shanahan approached him, and after professing great consideration for him, strenuously urged him to settle the suit, and informed him that Simons would settle for $1650, and that still later Simons in person offered to settle the suit for $1250, in money and a check for $364 payable to his, Simons' order, stating that the suit was in his hands and that if it were not settled he would keep the complainant, Henry Rees, out of his money for the next two or three years, by appealing the case to the higher courts; that in the same conversation, he, the witness, told Simons that he had every dollar he possessed in the work, and also all the money the banks could lend him.

The evidence further shows that the complainant, Henry Rees, thereupon executed the check demanded

and placed it in the hands of the defendant Shanahan, to be held by him until the city accepted the sewer and paid the complainant, Henry Rees, the balance due him, and that on the following morning the complainant, Henry Rees, paid the sum of $1250 in cash to Shanahan, who in turn paid it to Simons. The chancellor refused to permit either of the parties to introduce evidence as to whether or not the sewer was constructed according to the ordinance.

The decree, after reciting the institution of the chancery suit in question, finds *inter alia,* that the complainant, Henry Rees, was engaged in contracts requiring a large amount of ready money; that he was a man of moderate means, with most of his property in the form of real estate in the city of Quincy; that he had borrowed $20,000 and could borrow no more; that he was in financial difficulty, and believed that if the chancery proceeding in question were prosecuted and appealed, the final determination thereof would be long deferred and that he would be prevented from receiving the money due from the city until the final determination thereof, and thus financially ruined; that the city refused to pay the money due under said contract until said chancery proceeding was disposed of; that the defendant Simons, during the pendency of said suit, while the same was on hearing, offered to secure the dismissal of said proceeding and the dropping of the charges therein made concerning defective construction, and use his efforts to secure an early payment to said Rees by the city, of the amount due him, upon condition that Rees pay him the sum of $1650, with which to pay the special tax against the premises of the complainants in said cause; that said Rees, relying upon such representation and under duress and fear of being financially ruined, in case he failed to accept such offer, on July 26, 1910, accepted the same, and paid to the said Simons the money and check as in the bill

alleged; that it was agreed upon the dismissal of said cause and the payment by the city to Rees of the amount due him under the contract, such check was to be used for the payment of the attorney fees and costs incurred by the complainants in said suit; that with the money paid to said Simons he paid the special tax levied against the premises of the complainants in said chancery proceeding, and delivered to each of them a receipt therefor, and at the same time collected from them ten per cent of the tax, to be applied on attorney fees and costs incurred in the said suit. The decree orders that Simons pay to said complainant, Henry Rees, the sum of $1286, with interest, and fur ther, that the complainant have and recover of each of the other defendants the respective sums paid by said Simons to them out of said sum of $1286 in satisfaction of the special tax against said premises, that any sum paid by such other defendants be credited on the sum to be paid by said Simons and that in default thereof execution issue against each, and that the remaining defendants go hence without day.

We are not prepared to hold that the findings of the chancellor upon the controverted question of fact, as disclosed by the decree, are palpably contrary to the evidence, and must therefore, in discussing the legal questions presented, accept such findings as facts. We are of opinion that the chancellor was clearly warranted in finding that by unlawful threats to continue the prosecution of the chancery proceeding then pending, the defendants extorted from the complainant the money and check in question, and that he paid the same solely through fear of serious financial distress, if not ruin. Notwithstanding the complainant was not actuated by an apprehension of imminent danger to his life, limb or liberty, which element is essential to constitute a duress of person, it is manifest that he was coerced to act through what is characterized as duress of prop-

erty or moral duress, which overcame his free agency, and which equally with duress of person, entitled him to recover back the money paid by him under such influence. Duress of this character has been recognized by the courts of this state in the following cases: Spaids v. Barrett, 57 Ill. 289; County v. Simmons, 5 Gilm. 513; Thurman v. Burt, 53 Ill. 129; City v. Sperbeck, 69 Ill. App. 562; Pemberton v. Williams, 87 Ill. 15; C. & A. R. R. Co. v. Coal Co., 79 Ill. 121; Pub. Co. v. Ass. Press, 114 Ill. App. 241; Prickett v. Madison Co., 14 Ill. App. 454. Moral duress consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another; the theory under which relief is granted being that the party profiting thereby has received money, property or other advantage, which in equity and good conscience he ought not to be permitted to retain. R. Co. v. Coal Co., 79 Ill. 121; Pub. Co. v. Press Association, 114 Ill. App. 241. It seems too clear for argument that the transaction in question was contrary to public policy, and therefore illegal.

It is also true, as contended by counsel for the defendants, that as a general rule, the law will not aid either party to an illegal act, but will leave them without remedy as against each other. Compton v. Bank, 96 Ill. 301; Critchfield v. Paving Co., 174 Ill. 466; Doane v. Ry. Co., 160 Ill. 22. Such rule is, however, subject to the qualifications stated in 2 Pomeroy's Equity Jurisprudence, 459, in the following language: "When the contract is illegal, so that both parties are to some extent involved in the illegality,—in some degree affected with the unlawful taint,—but are not in *pari delicto*,—that is, both have not with the same knowledge, willingness and wrongful intent engaged in the transaction, or the undertakings of each are not equally blameworthy,—a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is com-

paratively the more innocent. Inequality of guilt exists when the contract is intrinsically illegal, and is of such a nature that the undertakings or stipulations of each, if considered by themselves alone, would show the parties equally in fault, but there are collateral and incidental circumstances attending the transaction and affecting the relations of the two parties which render one of them comparatively free from fault. Such circumstances are imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness, and the like.'' This doctrine is announced with approval in Baehr v. Wolf, 59 Ill. 470, and Paige v. Hieronymous, 180 Ill. 637.

In Evans v. Funk, 151 Ill. 650, after announcing the general rule above stated, the court says: ''But this general rule has its exceptions arising out of necessity or from unyielding principles of public policy or from the different conditions of the parties.'' ''The different degrees of turpitude, immorality or illegality may be so great between different persons engaged in such acts that the general rule will bend to meet the demands of such case and allow a recovery.'' In Story's Equity Jurisprudence, section 300, it is said that, ''in case where both parties are *in delicto,* concurring in illegal acts, it does not follow that they are *in pari delicto,* for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship or undue influence, or great inequality in conditions of age, so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be, on the part of the court itself, a necessity of supporting the public interest or policy in many cases, however reprehensible the acts of the parties may be.''

We are of opinion that the case at bar is clearly within the exeception stated. It certainly cannot be

said that the same willingness to enter into and perform the agreement existed on the part of the complainant, as was evinced by the defendants. The proposition was first broached and urged by the latter, and was, as has been said, accepted and acted upon by the complainant, not freely and voluntarily, but under moral duress and coercion. Such was not the case with the defendants. If they believed the charges of their bill to be true and well grounded and in disregard of the rights of the public and others interested, agreed, for a money consideration to them paid, to withdraw further opposition and thus permit the public to be defrauded, their conduct was manifestly wrongful and illegal. On the contrary, if they knew such charges to be false and baseless, the demand for and acceptance of the money and check bordered upon blackmail. The inequality of guilt of the respective parties is most apparent and we cannot escape the conclusion that the collateral and incidental circumstances attending the transaction were such as to render the complainant comparatively free of fault. If the only relief sought by the complainant was the recovery of the money paid, the contention of the defendants that he had an adequate remedy at law would be meritorious. It is further sought however, to procure the surrender or cancellation of the check. This relief is only attainable by a proceeding in chancery, and where equity assumes jurisdiction for one purpose it will retain it for all.

The decree of the circuit court is in accordance with equity and justice, and is affirmed.

*Affirmed.*