## Pittsburgh Steel Company, Appellant, v. Hollingshead & Blei, Appellee.

### Gen. No. 21,324.

1.  PAYMENT, § 44*—*when money paid under duress may be recovered.*  Where one is compelled to pay money to another, who has no legal right to demand it, in order to prevent injury to his person, business or property, such payment is in law made under duress and may be recovered from the party receiving it, and it makes no difference that the payment was made with full knowledge of all the facts.

2.  BILLS AND NOTES, § 272*—*what is necessary to charge prior indorser.*  Presentment for payment at maturity by an indorsee of a draft is necessary to hold a prior indorser.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. PAYMENT, § 44*—*what constitutes duress of property.* Duress of property, or moral duress, consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another, whereby his free agency is overcome.

4. PAYMENT, § 44*—*when evidence sufficient to entitle payor to set off money as paid under duress.* In an action for goods sold and delivered, where the defendant sought to set off money paid to the plaintiff which the latter claimed was paid in compromise of an indebtedness already created under a continuing contract of shipment, but which the defendant claimed was paid under duress in order to induce the plaintiff to continue shipments under the contract, evidence *held* to show that such payment was made under duress of property and was properly allowed as a set-off.

TAYLOR, J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. JOSEPH SABATH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed December 13, 1916.

CULVER, ANDREWS, KING & COOK, for appellant.

ALBERT MARTIN, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

The appellant, hereinafter called the plaintiff, sued the appellee, hereinafter called defendant, in the Municipal Court of Chicago to recover for goods sold and delivered under a written contract. The amount of plaintiff's claim was $2,587.46. The defendant filed an affidavit of merits admitting that there was due the plaintiff $1,689.67. Judgment was entered in favor of the plaintiff for this amount, and it was ordered that the suit proceed as to the balance. By agreement, the defendant filed a statement of set-off in the sum of $850, with interest at five per cent. per annum from November 4, 1912. The plaintiff filed an

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Pittsburgh Steel Co. v. Hollingshead & Blei, 202 Ill. App. 177.

affidavit of merits to the set-off and a trial was had on the issues thus formed, before the court and a jury. A verdict was returned finding the issues against the plaintiff, judgment was entered thereon, and the plaintiff prosecutes this appeal.

On November 24, 1911, the defendant entered into a written contract with the plaintiff for the purchase of 500 tons of hoop and band steel, and later on August 24, 1912, a second contract for 350 tons. The plaintiff made shipments from time to time under these contracts. On December 30, 1911, the defendant sent to the plaintiff, in settlement of invoices from October 3rd to December 6, 1911, amounting to $2,149.39, two drafts on the National Cooperage Company of Brooklyn, one for $900 dated December 2, 1911, and the other for $1,242 dated December 23, 1911, both of which had been accepted by the National Cooperage Company, and indorsed by the defendant. Both drafts were due sixty days from date. The defendant also inclosed its check for $7.39 to cover the difference between the amount of the invoices and the two drafts. The plaintiff cashed the check, entered the drafts in its bill book and turned them over to its treasurer. Neither of the drafts was presented for payment to the National Cooperage Company at maturity, and the defendant was not notified that the same had not been paid until February 28, 1912. Subsequently the National Cooperage Company went into bankruptcy and the plaintiff presented its claim based on the drafts against the bankrupt estate and received a dividend of twenty per cent. On September 13, 1912, the plaintiff brought suit against the defendant in the Municipal Court of Chicago to recover the balance alleged to be due on the invoices covered by the two drafts. The defendant filed an affidavit of merits, claiming that the amount had been paid by the drafts, which the plaintiff accepted in payment of the same.

The plaintiff refused to make any further deliveries until its claim was paid. After a conference between the parties, the defendant paid to the plaintiff $850, and thereupon the suit was dismissed by stipulation and shipments were resumed. The suit in the present case was brought to recover for a balance due on invoices from May 5th to July 2, 1913, with accrued interest. The defendant did not deny the amount of plaintiff's claim but sought to set off the $850 above mentioned, which it claims was paid to the plaintiff under duress.

The plaintiff contends that the payment of $850 was made after considerable correspondence had passed between the parties; that defendant had full knowledge of the facts and was fully advised as to its rights; that said payment was made in full settlement of the account then claimed to be due and an agreement was entered into that the suit then pending should be dismissed; that said suit was dismissed upon the payment of said sum, and in consideration thereof.

The defendant contends that the payment of $850 was not made in settlement of any account between the parties; that there was no debt due the plaintiff at that time; that the plaintiff took an undue advantage of the business distress of the defendant; that the defendant was compelled to make the payment in order to induce the plaintiff to resume shipments under the contracts, and that this was the sole reason for which the payment was made.

It is a well-settled rule of law in this State that where one is compelled to pay money to another, who has no legal right to demand it, in order to prevent injury to his person, business or property, such payment is, in law, made under duress, and may be recovered back from the party receiving it, and it makes no difference that the payment was made with full knowledge. *City of Chicago v. Northwestern Mut. Life Ins. Co.*, 218 Ill. 40; *Rees v. Schmits*, 164 Ill. App.

250; *Pemberton v. Williams,* 87 Ill. 15; *Illinois Glass Co. v. Chicago Tel. Co.,* 234 Ill. 535; *County of La Salle v. Simmons,* 10 Ill. (5 Gilm.) 513.

It is admitted by the plaintiff that the two drafts on the National Cooperage Company were mislaid and were not presented for payment at maturity. No excuse is offered by the plaintiff for its failure to present these drafts for payment, and it is not claimed that they would not have been paid if presented at maturity. Plaintiff was clearly negligent in failing to present the drafts for payment, and it would be unjust to hold that the defendant must suffer the consequences of plaintiff's negligence. Presentment for payment was necessary in order to hold the defendant as an indorser. Illinois Rev. St. ch. 98, sec. 70 (J. & A. ¶ 7710). Under these circumstances, the account was paid and the plaintiff had no legal right to again demand payment.

The only question left for us to determine is whether or not the payment of $850 was made under duress. The duress complained of by the defendant is what is known as duress of property, or moral duress. This kind of duress consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another, whereby his free agency is overcome. *Rees v. Schmits, supra; Chicago & A. R. Co. v. Chicago, V. & W. Coal Co.,* 79 Ill. 121; *County of La Salle v. Simmons, supra; City of Chicago v. Northwestern Mut. Life Ins. Co., supra.*

The evidence in the case at bar tends to show that the defendant had placed with the plaintiff several orders for hoop and band steel which had not been filled; that defendant had resold these orders to its customers and was under urgent necessity of securing prompt shipment of the same; that, owing to the unusual demand for steel at that time, it was difficult, if

not wholly impossible, for the defendant to obtain the steel elsewhere. The plaintiff admits that it refused to make any further shipments under the contracts until the defendant paid for the invoices covered by the drafts. Mr. Blei, president of the defendant company, testified emphatically that the payment of $850 was not made in settlement of any account, but was made for the sole purpose of inducing the plaintiff to resume the shipments of steel, of which it stood greatly in need.

The theory upon which plaintiff attacks the judgment is that it had a claim against the defendant, about which there was a bona fide controversy, and upon which it had admittedly brought suit, and that as it believed the defendant to be in arrears, they had the right under its contract to withhold shipments, and that as there was a bona fide dispute in regard to the question of whether the defendant was or was not liable, that was sufficient to support a compromise. Defendant's theory of the case, however, was that the facts disclosed and known to the plaintiff show, beyond all dispute, that there was no liability on its part for the item claimed, and that by its claim, the plaintiff was attempting to compel the repayment of a matter already settled, and that it took advantage of the situation in which defendant found itself to compel defendant to pay a sum of money which it was not, in any way, obligated to pay, and that the means employed by the plaintiff was its unlawful refusal to perform its contract with the defendant unless defendant complied with its unlawful demands when it knew that such an unlawful refusal to comply with its contractual duty would result in intolerable financial distress to defendant. If the facts contended for by the defendant were true, the action of the plaintiff, under the authorities cited, clearly amounted to moral duress. Every intendment must be in favor of the verdict, and it must be assumed that the jury found

the facts to be as contended for by the defendant. As such findings could not be said to be manifestly contrary to the weight of the evidence, the judgment must be affirmed.

*Affirmed.*

MR. JUSTICE TAYLOR dissenting.

Being unable to perceive that a compromise agreement (such as exists in this case) voluntarily made between two business corporations as the result of protracted conferences and negotiations, each party thereto having admittedly at the time a full and complete knowledge of all material facts and the law, should be allowed thereafter to be broken by the court on the sole ground that the complaining party now claims in stultification of its promise it was subjected to property or moral duress, I am constrained to dissent.