Alma L. Slade, Appellant, v. Dana Slade, Jr., et al., Appellees.

Gen. No. 41,493.

Burke, J., dissenting.

Opinion filed April 23, 1941.

Manasse & Neltnor, of Chicago, for appellant; Milton G. Manasse, of Chicago, of counsel.

ECKERT & PETERSON, of Chicago, for appellees; W. W. Ross, JR. and WALTER SPEER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from an order of court dismissing plaintiff's amended complaint upon the motion of defendants, the plaintiff having elected to stand on her amended complaint.

The complaint is in three counts. The first count alleges that defendant Dana Slade, Jr., schemed to compel plaintiff to sell said defendant her interest in Slade, Hipp & Meloy, Inc., an Illinois corporation, for less than the true worth of said interest and less than the price applicable to a purchase thereof by said defendant, as determinable by a pre-existing contract between plaintiff's husband, Samuel Slade, deceased, and said defendant; and that to effectuate said scheme, said defendant exercised various means and devices, as hereinafter specified, to depreciate the apparent value of said corporation's stock and to coerce plaintiff into selling said defendant her interest therein on the basis of such depreciated apparent value. Said count further alleges that said defendant asserted a false claim against the estate of plaintiff's deceased, husband, Samuel Slade; that said defendant (a) set up on the books of the corporation a $5,000 reserve for "accrued taxes," when in fact said corporation had no accrued tax liability; (b) set up a reserve which was excessive by at least $2500 for claims; (c) caused certain accounts receivable in the sum of $2,618.29, to be charged off as "bad debts," whereas such debts so charged off were collectible and collected; (d) caused unauthorized and illegal expenditures and gifts from funds of the corporation during 1936, as follows (1) commissions in excess of amounts legally payable, $2600 (2) cancellation of obligations due to the cor-

poration of $1,340.41; (e) that said defendant caused an excessively large adjustment to physical inventory, resulting in an erroneous and fraudulent diminution of the assets of said corporation, the excess of diminution so effected being $4,200; (f) that said defendant caused the apparent corporate assets to be reduced by noting as paid, when in fact not paid, salaries excessive as to $8,985.50, traveling expenses excessive as to $7,542 and miscellaneous office expenses, excessive as to $3,720.97; all of which acts were done—it is alleged—to effect an apparent reduction in the value of plaintiff's interest in said corporation.

Said count further alleges that said defendant contrived to force plaintiff, by duress of circumstance, to abandon her rights under the contract aforesaid and to sell her stock for less than its true worth. The elements of duress as alleged are as follows: (a) that said defendant, knowing that plaintiff, who had already attained the age of 70 years and was no longer able to support herself, had been accustomed to that type of living made possible by her husband's salary of $12,000 or more per annum, would, after the expiration of one year from said husband's death, be without appreciable income or means of support, persisted in the aforesaid devices for deliberately undervaluing plaintiff's stock so that plaintiff should ultimately be so impoverished that she would have no choice but to sell said stock on defendant's terms, whether reasonable or unreasonable (b) that said defendant wilfully failed to effect a release of said Samuel Slade's liability to Continental Illinois National Bank & Trust Company of Chicago, for indebtedness of Slade, Hipp & Meloy, Inc., and thereby made it impossible for plaintiff to procure release of certain of Samuel's stocks pledged to said bank as collateral security for said indebtedness; (c) that, despite plaintiff's ownership of half of the stock of said Slade, Hipp & Meloy, Inc., Dana Slade (1) wilfully prevented

plaintiff from exercising any rights of stock owner-
ship in said corporation (2) refused to call and hold
a meeting of the shareholders of said corporation
when thereunto requested by plaintiff (3) made mani-
fest that he controlled all shareholders of said cor-
poration other than plaintiff, and that he would use
such control to prevent the presence of a quorum at
any meeting called by plaintiff (4) held meetings of
shareholders of said corporation without notice to
plaintiff and at such meetings voted plaintiff's shares
in said defendant's own name; (d) that said defendant
gave plaintiff no notice of the time for the taking of
inventory, although plaintiff was entitled to partici-
pate therein; (e) that said defendant caused one
Dinges, who held stock for the joint benefit of said
Samuel and said Dana Slade, to treat said stock as
being held solely for said Dana Slade and, ultimately,
to transfer same to said Dana Slade.

Said count further alleges that plaintiff expended
and became obligated for large sums of money for
legal and accounting services, including at least $3,500
of expense made necessary by Dana Slade's actions
aforesaid; that by the end of November, 1938, plain-
tiff, being without funds to maintain herself or to meet
her legal and accounting expenses and without pros-
pect of receiving such funds, except out of settlement
with said Dana Slade, or sale of said pledged securities
(unavailable to her until after settlement with said
Dana), was compelled to accept an offer of said Dana
Slade for sale at $55,000 (being at least $15,000 less
than true worth) and with interest on deferred in-
stalments of purchase price at 5 per cent per annum,
instead of 6 per cent as provided by the contract; that
plaintiff would not have sold on said terms except that
she was under duress of being compelled so to do for
lack of finances and lack of prospect for finances, ex-
cept by so doing; and that the price, terms and condi-
tions of such sale were so different from those pre-

scribed by the contract, that said sale was not actually an effectuation of the contract, but was a new transaction forced upon plaintiff by the aforesaid actions of said Dana Slade.

The second count further alleges that defendants Kehoe and Dinges conspired with Dana Slade to aid him in the effectuation of said scheme and participated with him in each of said actions.

The third count alleges a duty upon Dana Slade's part to effect release to plaintiff of Samuel Slade's securities pledged for the corporate indebtedness; that, notwithstanding plaintiff's requests for fulfillment of said obligation, Dana Slade wilfully failed to observe said duty and that before plaintiff could reduce such stock to her possession same depreciated $9,000 in value.

Defendants' motion to dismiss is based on the claim that; first, the facts alleged do not show duress; and that, second, even if duress did exist, plaintiff's remedy would be rescission of the sale, not affirmance of the sale and suit for damages.

The plaintiff and her husband, Samuel Slade, were the owners of one half of the stock of said corporation at the date of the death of Samuel Slade. On December 18, 1936, Dana Slade notified plaintiff of his election to purchase her stock for the price and upon the terms set forth in the contract of February 2, 1932. This contract, entered into between Samuel Slade, Dana Slade, Ida Slade, wife of Dana, and plaintiff, was executed in order to effectuate a plan for the conduct of the business by the survivor of Samuel and Dana Slade, after the decease of one of them. The contract granted the surviving brother an option for purchase of all stock of the first deceasing brother and his wife (1) on January 1st of the year following the death of the first deceasing brother, at a price per share to be determined by dividing among the total number of shares outstanding, the excess of assets

(other than good will) over liabilities, purchase price to be paid in 10 equal annual instalments, or (2) at the price offered by any outsider, if the stock were not so purchased within one year of such death, and with a five-day period for preferential purchase by the surviving brother, before sale to such outsider might be effected. At the time of Dana Slade's notice of his election to purchase plaintiff's stock, plaintiff was 70 years of age, and was no longer able to support herself, it is alleged, and that excepting only for dividends of $1,264 in 1937, $950 in 1938, and $395 from the sale of certain stock, plaintiff had no income after the lapse of one year from her husband's death. In his lifetime she had been accustomed to that manner of living made possible by his salary of $12,000 or more per annum.

The plaintiff, in considering the law as applied to the facts, urges that the rule of duress and coercion applies, and we quite agree with the suggestion of plaintiff that the law is, as stated in 13 C. J. 402, that: ". . . the question of duress is one of fact in the particular case, to be determined on consideration of the surrounding circumstances, such as age, sex, capacity, situation, and relation of the parties; and that duress may exist, whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other, and that the contract is obtained by reason of such fact." In the same citation, page 403, it is further said:

"Where the parties are not at arm's length, but one of them is in a position to dictate, the courts will treat agreements which are influenced by threats of injury to, or the withholding of, property as made under duress, as where a banker refuses to honor a customer's check unless he accedes to a false and fraudu-

lent claim; where one with the necessary power threatens to prevent the clearance of a vessel; where a gas or water company refuses to furnish gas until a promise which it has no right to exact is made; where a state institution refuses to admit a student unless a payment of an illegal fee is made by him; and other like cases." These rules, of course, apply in cases where the question of duress is one of fact, and in all of the cited cases it is apparent that the application of the rule must be sustained by the facts as they appear in the record. There are other cases cited which approve of the rule as indicated in corpus juris. In applying this rule, we are obliged to do so to the facts alleged. It appears from the amended complaint that the plaintiff is a widow of 70 years of age, whose deceased husband had accustomed her to that type of living made possible by his annual income of $12,000 or more; that Dana Slade, one of the defendants, is a brother of her late husband, and that the plaintiff was without appreciable income or means of support. It is urged that when Dana Slade decided, therefore, that he would like to have plaintiff's interest in the corporation, he established an arbitrarily low valuation on the stock. It is alleged that Dana Slade asserted a false claim for over $15,000 against Samuel Slade's estate (of which estate, plaintiff was sole beneficiary), and plaintiff suggests that such claim cannot be construed other than as an act of coercion and oppression upon plaintiff and urges that the allegation of such false claim is admitted by the motion to dismiss.

Under the provisions of the will of Samuel Slade, plaintiff succeeded to the ownership of such high grade and valuable stockholdings as 375 shares of Union Carbide & Carbon Corporation stock, 32 shares of Westinghouse Electric Company stock, 65 shares of Wm. Wrigley, Jr. Corporation stock, 50 shares of Chicago Corporation stock, and 40 shares of Electric

Household Utilities Corporation stock, which stocks were pledged to Continental Illinois National Bank & Trust Company as collateral to secure an indebtedness of Slade, Hipp & Meloy, Inc., the stock of which corporation is now in question. Plaintiff urges that, having elected to exercise the stock option, Dana Slade was obliged to post other collateral for the company's indebtedness, and thus enable plaintiff to dispose of her stock which was pledged as collateral for said indebtedness. Plaintiff urges that by the allegations in the complaint Dana Slade's purpose would have been hindered, and not served, had plaintiff been given free access to the pledged collateral, and that he, therefore, failed to free the collateral, with the result that she was unable to reduce the stock to her possession until after she sold the Slade, Hipp & Meloy, Inc., stock to the defendant, Dana Slade; and that the only purpose for said defendant's wilful failure to release the pledged stock was to oppress the plaintiff; and that, after considering all of the facts alleged in the amended complaint, plaintiff was obliged because of her impoverished condition to accept Dana Slade's terms for the sale of the stock, whether reasonable or not.

It must be conceded that there can always be a legitimate difference of opinion as to the value of the stock of Slade, Hipp & Meloy, Inc., the question of value being determined largely by the stock of merchandise on hand and the business operated by the brothers, Dana Slade and Samuel Slade.

It further appears as alleged that Dana Slade prevented plaintiff from exercising her rights of stock ownership, that he voted her shares in his own name, and it is urged by plaintiff that this with his other actions must all be recognized as means of harrassing and coercing plaintiff into action which would otherwise have been unacceptable to her. The contract of February 2, 1932, must be deemed to have been exe-

cuted primarily for the benefit of the surviving brother, and was essentially a recognition that the business, although in corporate form, was actually a joint enterprise of the two brothers, the purpose of the contract being to give the surviving brother an absolute continuing option to determine whether the business should become his alone or one in which others might have a part. The stock was not susceptible to valuation by the ordinary market influences of supply and demand, and the continuing option provision of the contract made the stock virtually unsalable to anyone except a party to the agreement.

On February 2, 1932, Samuel Slade, Dana Slade, Ida Slade, wife of Dana, and plaintiff were the owners of all the shares of stock of this corporation, and subsequent to the death of Samuel Slade, on February 16, 1936, the defendant, Dana Slade, notified plaintiff on December 18, 1936, of his election to purchase her stock for the price and upon the terms set forth in the contract. During the time between the death of her husband and the time when she sold her stock to defendant, Dana Slade, excepting the receipt of dividends of $1264 in 1937, $950 in 1938, and $395 from the sale of certain stocks, plaintiff had no income after the lapse of one year after her husband's death.

It appears that the plaintiff requested defendant, Dana Slade, to effect a release of the stock that was pledged for the liability of the Slade, Hipp and Meloy, Inc., that he neglected to meet with this request, and that plaintiff was unable to reduce the pledged stock to her possession until late in the month of December, 1938, being two years from the date of the notice of Dana Slade that he would purchase the stock in question. During this period, the stock depreciated in value approximately to the amount of $9,000 at the date when the stock was in fact released to the plaintiff. Plaintiff is seeking to recover this amount. It would appear from the facts alleged in the pleadings

that the delay in the settlement of the matter that existed between the plaintiff and defendants was caused by the acts of the defendant, Dana Slade, in order—as alleged—to decrease the value of the holdings of Samuel Slade. Under the allegations made, the matter was proper to submit to a jury.

The argument is offered by the defendants that, the plaintiff having accepted the amount that was paid, there is no right of recovery. In the case of *News Publishing Co. v. Associated Press,* 114 Ill. App. 241, upon this question the court said:

"A further claim is made to the effect that appellant having paid its money and delivered its property, the guaranties in question, voluntarily and upon its own request, there could be no right of action. We think this claim is untenable, for the reason that the basis of the action is the duress under which the appellant acted, in view of which there can be said to be no voluntary payment of the money nor voluntary parting with appellant's property." This language applies with equal force to the questions involved in the instant case. As we have stated before, the rule of duress and its application depends entirely upon the facts established at a hearing on the merits. There are other cases where, money or property having been accepted, it has been held the acceptance of such money was not a voluntary payment. They either had to accept it or depend on tort litigation as was suggested by the parties in this litigation. In the case of *Chicago & A. R. Co. v. Chicago, Vermilion & Wilmington Coal Co.,* 79 Ill. 121, the court said:

"It can hardly be said these enhanced charges were voluntarily paid by appellees. It was a case of 'life or death' with them, as they had no other means of conveying their coal to the markets offered by the Illinois Central, and were bound to accede to any terms appellants might impose. They were under a sort

of moral duress, by submitting to which appellants have received money from them which in equity and good conscience, they ought not to retain.'' And in *Rees v. Schmits,* 164 Ill. App. 250, the court in setting up the facts as they applied to the case said this on the question of duress:

''Moral duress consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another; the theory under which relief is granted being that the party profiting thereby has received money, property or other advantage, which in equity and good conscience he ought not to be permitted to retain.'' Upon a like question in the case of *Pittsburgh Steel Co. v. Hollingshead & Blei,* 202 Ill. App. 177, on the questions involved in that case, said:

''It is the well-settled rule of law in this State that where one is compelled to pay money to another, who has no legal right to demand it, in order to prevent injury to his person, business or property, such payment is, in law, made under duress, and may be recovered back from the party receiving it, and it makes no difference that the payment was made with full knowledge.'' Other cases of like character are called to our attention, and we are of the opinion that sufficient facts were alleged to justify the submission of the cause to a jury, notwithstanding the fact that plaintiff was obliged to receive the money from defendant, Dana Slade, and that upon defendants' motion to strike the amended complaint, the allegations are sufficient to permit of recovery in this action of tort.

An interesting case is cited by plaintiff, *Illinois Merchants' Trust Co. v. Harvey,* 335 Ill. 284, where the trial court dismissed the case on the ground that lessee could have avoided forfeiture by a bill to restrain, the court going on to pass upon the question involved in this case. The court there said that ''com-

pulsory payment is primarily a question of fact . . . .''
The character of the instant case is that of a compulsory acceptance of the amount that was offered by the defendants for the purchase of the stock in question. In the *Illinois Merchants' Trust Co.* case (*supra*) the court said in passing upon the question of common law duress:

''At the common law duress meant duress only of person, and nothing short of a reasonable apprehension of imminent danger to life, limb or liberty sufficed as a basis for an action to recover money paid. The doctrine became gradually extended, however, to recognize duress of property as a sort of moral duress, which, equally with duress of person, entitled one to recover money paid under its influence. To-day the ancient doctrine of duress of person (later of goods) has been relaxed, and extended so as to admit of compulsion of business and circumstances. *Illinois Glass Co. v. Chicago Tel. Co.*, 234 Ill. 535.''

As before indicated, we believe that the allegations of the amended complaint are sufficient, upon defendants' motion to dismiss, to clearly entitle the plaintiff to have her case submitted and disposed of upon the evidence that may be offered upon the trial of the action.

As also before indicated, the defendants contend that plaintiff must repudiate her sale and that her sole action is for rescission, in order that the parties may be placed in *status quo*. As answer to defendants' contention, plaintiff suggests that admittedly, plaintiff's grounds for this suit are grounds for rescission; but that is not her sole remedy; and that the law is quite clear that plaintiff may affirm the transaction, so far as it has gone, and sue in tort for her damages sustained by reason of the defendant's wrongful acts. This being a case where the facts as alleged, justified the submission of the cause for trial on its merits, and, as we have said, there being no waiver, it is well to

have in mind what this court said in *News Publishing Co. v. Associated Press,* 114 Ill. App. 241, as follows:

"It is also said that if there was duress appellant has waived it, because the Associated Press, the appellee, went out of business in the fall of 1900, when the duress, if any, ceased, though appellant did not promptly repudiate the contract and commence its action. The cases of *Eberstein v. Willetts,* 134 Ill. 101, and *Bogue v. Franks,* 199 Ill. 411–19, are cited as supporting the contention. We think they have no application here, since this action is not based upon a rescission of the contract (*Brumbach v. Flower,* 20 Ill. App. 219), but upon the wrong done appellant at the time it was compelled to enter into the contract by reason of its necessities. Appellant was entitled to bring its action, as in the case of any other tort, at any time before the Statute of Limitations was a bar."

In conclusion, we are of the opinion that the plaintiff is entitled to a reversal of the order appealed from and to a trial upon the merits of this case. The order dismissing the plaintiff's amended complaint is reversed and the cause remanded for further action in conformity with the views herein expressed.

*Reversed and remanded.*

DENIS E. SULLIVAN, J., concurs.

MR. JUSTICE BURKE dissenting: By the clear provisions of paragraph 1 of section 31 of the Civil Practice Act (par. 155, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.031]) the complainant is required to aver "the substantial averments of fact necessary to state any cause of action either at law or in equity." The complaint in the instant case does not contain such averments and is vulnerable to a motion to dismiss. Such motion admits all facts that are well pleaded, but does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts, and the pleading is construed most

strongly against the pleader. Plaintiff contends that she was forced to sell her stock at an unconscionable price because of various acts of duress exercised by the defendants. She sold the stock for the sum of $55,000. Her complaint shows that after Dana elected to purchase the stock she hired attorneys and accountants to go over the books, to advise her and to protect her interests. Hence, if she has a cause of action she should be able to set up the ultimate facts showing such cause of action. One of the principal grounds of coercion asserted is that Dana did not pay off the indebtedness owing to the bank, thereby preventing her from securing the collateral which had been put up by her husband. She maintains that she was without funds and that Dana did not pay the indebtedness in order to prevent her from obtaining the securities that had been so deposited by her husband. She does not state the amount of the indebtedness of the corporation to the bank, nor when it became due, nor whether the corporation, after the death of her husband, was in a position to pay such indebtedness. If she had set out these facts, the court could by reading the complaint, determine whether the failure to pay the indebtedness by the corporation constituted an act of duress. The complaint also charges that Dana caused the corporation to file a claim against her husband's estate in the sum of $15,842.88, and that this claim was without foundation and was advanced in order to reduce the value of plaintiff's interest in the corporation. She does not set up any facts showing how this claim was represented to the probate court, or in what respect it was unfounded, or what action was taken thereon in the probate court. It is common knowledge that on filing a claim in the probate court, an early trial may be had. She could have insisted on a trial as to the merits of the claim. When she accepted $55,000 for the stock, the corporation and the defendants released all

claims they were asserting against the estate of her husband. Practically all of the material allegations of the complaint are conclusions of law or of fact, which the motion to dismiss does not admit. With such conclusions eliminated, the complaint does not state a cause of action.